# EXHIBIT A

**LEASE AGREEMENT**

LEASE ("Lease") made this 28 day of August 2026, by and between **ATRIUM PROPERTIES, LLC**. hereinafter Business Manager, a Pennsylvania limited liability company at 1123 N Broad Street, Allentown, PA 18104 (hereinafter collectively called "Landlord") and **Omni Health Services Inc.** (hereinafter called "Tenant").

**W I TN E S S E T H:**

1. **DEMISED PREMISES:** Landlord, for the term and subject to the provisions and conditions hereof, leases to Tenant, and Tenant accepts from Landlord. the space (hereinafter referred to as the "Demised Premises" and more particularly described by the cross-hatched area on the floor plans attached hereto as Exhibit "A"), known as Suite 200, consisting of approximately 2250 +/- sq. ft. ("Rentable Square Footage of Premises") on the first floor of the building known as The ATRIUM and located at 127 South 5th Street, Quakertown borough. Bucks County, Pennsylvania (the "Building"), to be used by Tenant for the purpose of Mental Health related services, counseling, therapies.

Second Floor Common Area is included in this lease.

**Exhibit A, attached, shows the initial planned layout of Suite 200**

2. **TERM:**

**Initial Term**. Tenant shall use and occupy the Demised Premises for an Initial Term of Five (5) Years, commencing on November 20, 2026. at which time the Landlord shall be required to deliver possession to the Demised Premises ("Lease Commencement Date") and ending as of the end of the November 19, 2031.

**Extension Terms.** Tenant may extend the term of this Lease for Three (3) successive Extension Terms. (hereinafter the "Extension Terms") The first equals a Two (2) Year Extension Term, then Two (2) Extensions of Three (3) years each. Each Extension Term shall automatically occur unless Tenant provides the Landlord with written notice to cancel the automatic Extension Term not less than Six (6) months prior to the end of the current term. This requirement applies to all successive Extension Terms. Additionally, if should Tenant decide not to renew then Tenant agrees to provide Landlord with as much notice as possible of plans to leave, allowing the Landlord to backfill the suite. Rent during each of the Extension Terms shall be increased by CPI (avg. 4.5-5.5%) per year each during the Extension Term.



Initial

If Tenant remains in possession of the Demised Premises after the end of the initial term of this Lease, or after the end of any Extension Terms, without the written consent of Landlord, such holding over shall, if rent is accepted by Landlord for any period after the expiration of such term, create a tenancy from month to month with respect to the Demised Premises on the same terms and conditions as are in effect on the last day of the preceding term, except that the minimum monthly rental shall be increased to an amount equal to one hundred fifty percent (150%) the minimum monthly rental effective on the 1st day of the immediately preceding term.

**3. GROSS RENT AMOUNT:**

Tenant shall pay as Adjusted Gross Rent for the Demised Premises during the Initial Term of this Lease as follows:

**Year 1 $2,400.00 monthly $28,800.00 annually**

**Year 2 $2,450.00 monthly $29,400.00 annually**

**Year 3 $2,500.00 monthly $30,000.00 annually**

**Year 4 $2,550.00 monthly $30,600.00 annually**

**Year 5 $3,000.00 monthly $36,000.00 annually**

Landlord Credits shall not be applicable to any subsequent lease extensions or renewals after the initial three-year term.

If the initial term of this Lease begins on a day other than the first day of a calendar month, rent from such day until the first day of the immediately following month shall be prorated (at the rate of one-thirtieth (I/30th) of the fixed monthly rental for each day) and shall be payable, in arrears, on the first full calendar month of the term hereof (and, in such event, the installment of rent paid at execution hereof shall be applied to the rent due for the first full calendar month of the term hereof).

All rent and other sums due to Landlord hereunder shall be payable at the office of Landlord, **ATRIUM PROPERTIES, LLC. 1123 N Broad Street, Allentown, Pennsylvania 18104,** or to

Initial

such other party or at such other party or at such other address as Landlord may designate, from time to time, by written notice to Tenant, without demand and without deduction, set off or counterclaim.

If Landlord, at any time, shall accept said rent or any other sum due to it hereunder after the same shall become due and payable, such acceptance shall not excuse delay upon subsequent occasions, or constitute, or be construed as, a waiver or any of Landlord's rights hereunder.

**Tenant will pay the Landlord an annual check amount of one hundred fifty dollars ($150.00) for the inspection of the Tenant's fire extinguisher and sprinkler system. Tenants must pay for their door sign by Landlord approved vendor, annual business license will be billed directly to the tenant from Quakertown Borough. Tenant to provide payment for the sign fee and use and occupancy initial fee.**

## 4. SECURITY DEPOSIT:

Tenant shall deposit with Landlord upon execution hereof one month's Rent: Two thousand four hundred dollars ($2,400.00) as security for Tenant's faithful performance of tenant's obligation hereunder. If Tenant fails to pay rent or other charges due hereunder, or otherwise defaults with respect to any provisions of this Lease, Landlord may apply or retain all or any portion of said deposit for the payment of any rent or other charge in default or for the payment of any other sum to which Landlord may become obligated by reason of Tenant's default, or to compensate Landlord for any loss or damage which Landlord may suffer thereby. If Landlord so uses or applies all or any portion of said deposit, Tenant shall, within fifteen (15) days after written demand thereof, deposit cash or immediately available funds with Landlord in an amount sufficient to restore said deposit to the full amount hereinabove stated and Tenant's failure to do so shall be a material breach of this Lease. Landlord shall not be required to keep said deposit separate from its general accounts, except to the extent required by law. If tenant performs all of Tenant's obligations hereunder, said deposit, or so much thereof as has not theretofore been applied by Landlord, shall be returned without payment of interest or other increment for its use to Tenant (or at Landlord's option, to the last assignee, if any, or Tenant's interest hereunder) at the expiration of the term hereof, and within ten days after Tenant has vacated the Demised Premises. No trust relationship is created herein between Landlord and Tenant with respect to said Security Deposit. In the event Landlord transfers title to the Building, Landlord may also transfer its interest in the Security Deposit.

Initial

**SERVICES:** Landlord agrees that so long as tenant is not in default of any of its payment obligations hereunder and not in default of any material nonpayment obligation hereunder, Landlord shall:

A Maintain the structural components, and common areas (including, without limitation, the elevators) of the building and the systems servicing the Building and the Demised Premises (including, without limitation, the repair, replacement of components for the suite's HVAC system, so long as the Tenant has maintained the required annual maintenance service agreement with a provider annually) in good condition. garbage and exterior maintenance, landscaping and snow plowing. In the event that any such maintenance is required by reason of the negligence or abuse of Tenant or its agents, employees, invitees or of any other person using the Building with Tenant's consent, expressed or implied, Landlord may perform such maintenance and add the cost thereof to the next installment of rent which will thereafter become due, unless Landlord shall have actually recovered such cost through insurance proceeds.

Maintain and keep the parking area of the building, sidewalks and exterior common areas in good condition, illuminated during normal twilight and evening business hours, clean and reasonably free of debris, ice and snow.

It is understood that Landlord does not warrant that any of the services referred to in this Section 6 will be free from interruption by reason of strike, accident, emergency weather conditions or any other causes beyond the reasonable control of Landlord. No interruption of service beyond the reasonable control of landlord for less than 10 days shall never be deemed an eviction or disturbance of Tenant's use and possession of the Demised Premises or any part thereof, or confer any benefits or rights in third parties, or render Landlord liable to Tenant's obligations under this Lease.

**5. USE OF DEMISED PREMISES:**

Tenant agrees on behalf of itself, its employees and agents that it shall:
To the extent Tenant makes structural changes to the Demised Premises of the Building, Tenant will always comply with any and all Federal, state or local statutes, regulations, ordinances, and other requirements of any of the constituted public authorities relating to its use and occupancy of the Demised Premises.

Be responsible for all maintenance to the Demised Premises. and at Tenant's sole expense, make all necessary or appropriate repairs, replacements, renewals, ordinary and extraordinary,

Initial

foresee and unforeseen, required to keep and maintain the Demised Premises and all systems, equipment and apparatus appurtenant thereto or used in connection therewith in good order and condition.

Upon the termination of this Lease in any manner whatsoever, remove Tenant's goods and effects and those of any other person claiming under Tenant, and quit and deliver up the Demised Premises to Landlord peaceable and quietly in as good order and condition as at the inception of the term of this Lease, reasonable use and wear thereof, damage from insured casualty, and repairs which are Landlord's obligation, excepted. Goods and effects not removed by Tenant at the termination of this Lease, however, terminated, shall be considered abandoned and Landlord may dispose of or store the same as it deems expedient, the cost thereof to be charged to Tenant. All alterations and improvements installed by Tenant, except for Tenant's trade fixtures, that are considered permanently affixed to the Demised Premises shall not be removed by Tenant and become property of the Landlord at termination of this Lease.

Not overload, damage or deface the Demised Premises or do which might make void or voidable any insurance on the Demised Premises of the Building or which may render an increase or extra premium payable for insurance (and without prejudice to any right or remedy of Landlord regarding this subparagraph, Landlord shall have the right to collect from Tenant, upon demand, any such increase or extra premium).

Not make any alterations of or addition to the Demised Premises without the prior written consent of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed.

Tenant shall not install or maintain either on the interior of the premises visible from the outside or on the exterior of the premises, any signs, placards, or posters of any nature which are not first approved in writing by Landlord as to size, type, content, location, or other characteristic of the same which approval shall not be unreasonably withheld, conditioned or delayed.

Tenant agrees that it will be responsible for any and all utilities supplied to the Demised Premises and shall be required to make an application for said utilities and to pay any and all bills rendered by the utilities. Tenant further agrees that it will be responsible for the cost of heating and air conditioning or any fuel or power required to heat or air condition the Demised Premises including hook-up charges. Landlord represents that the utilities to the Demised Premises are separately metered.



Initial

Tenant agrees to clean and maintain as needed, all glass areas which comprise part of the Demised Premises and which front on the Atrium portion of the building, and to maintain and keep in clean condition all areas of the Demised Premises viewable from such atrium.

6. **CONSTRUCTION:** Should Tenant cause certain improvements (the "Improvements") to be made to the Demised Premises in accordance with plans for construction on the Demised Premises, which will be prepared by Tenant and approved by Landlord which approval shall not be unreasonably withheld, conditioned or delayed.

Should tenant construct, they shall be solely responsible for planning, paying and advancing funds for the cost of constructing outside of the Agreed Improvements and ensuring that all construction is done in accordance with local laws and ordinances. Tenant shall contract with service providers and contractors to accomplish the improvements, and these shall all carry liability insurance of at least $2,000,000 when they are rendered and shall keep the building free and clear of liens additionally insuring the Landlord and with said approvals in writing.

7. **SUBLETTING AND ASSIGN:** Tenant shall not assign this Lease or sublet all or any portion of the Demised Premises without first obtaining Landlord's prior written consent thereto, which consent shall not be unreasonably withheld, conditioned or delayed and which consent, if given, shall not release Tenant from its obligation hereunder, unless expressly agreed in writing, and shall not be deemed a consent to any further subletting or assignment. Prior to requesting Landlord to consent to any such subletting or assignment, Tenant shall provide Landlord with a fully executed copy of the sublease or assignment, which must be satisfactory or Landlord in its sole discretion, and written evidence that such sublease or assignee has assumed all obligations or Tenant hereunder. Tenant shall not be released of any of its obligations hereunder unless Landlord does so in writing. Tenants shall not mortgage or encumber this Lease.

Notwithstanding the foregoing, Tenant shall have the right, upon notice, but without the Landlord's consent, to make the following Lease transfers (each of the following, a "Permitted Transfer;" collectively, the "Permitted Transfers"): (1) assign the Lease to a wholly-owned subsidiary, parent or affiliate of the Tenant, any business entity succeeding to substantially all of the assets of the Tenant as a result of merger or consolidation, or any business entity which has purchased all or substantially all of the Tenant's assets; and (2) sublet the Premises to a similar field of service who is either:

(a) occupying less than fifty percent (50%) of the Premises or
(b) is occupying greater than fifty percent (50%) of the Premises for less than fifty



Initial

percent (50%) of the time; provided that:

(i) at the time of such Permitted Transfer, no default (or any event which with the giving of notice or passage of time or both would constitute default) by the Tenant exists under this Lease; and

(ii) such assignee or sublessee assumes this Lease in writing and agrees to be bound by all of the Tenant's obligations under this Lease, and a duplicate original of the assumption or sublease document is given to the Landlord within ten (10) days after it is executed. The parties hereto agree that upon the assignment of the Lease as permitted hereunder, Tenant shall be released from all obligations, liabilities, and covenants under this Lease.

8. **FIRE OR OTHER CASUALTY**: In case of damage to the Demised Premises or the Building by fire or other casualty, Tenant shall upon obtaining knowledge of same, give immediate notice thereof to Landlord. Landlord shall thereupon cause the damage to be repaired with reasonable speed, at the expense of the Landlord, subject to delays which may arise by reason or adjustment of loss under insurance policies and for delays beyond the reasonable control of Landlord. To the extent and for the time that the Demised Premises are thereby rendered untenantable, the rent shall proportionately abate. In the event the damage shall be so extensive that Landlord shall decide not to repair or rebuild and/or if the damage is so extensive that the Demised Premises cannot be restored within one hundred twenty (120) days after such casualty, this Lease shall at the option of Landlord or Tenant, exercisable by written notice to the other given within sixty (60) days after Landlord is notified of the casualty, be terminated as of a date specified in such notice (which shall not be more than ninety (90) days thereafter), and the rent (taking into account any abatement as aforesaid) shall be adjusted to the termination date, and Tenant shall thereupon promptly vacate the Demised Premises, the balance of the Security Deposit shall be returned to Tenant and Tenant shall have no further liability under this Lease. * Tenant must have renter's insurance that includes a water back up endorsement, sufficient coverage for Tenant's personal property with the Landlords named as additional insured. Proof of coverage is required prior to moving in date.

9. **LIABILITY:** Tenant agrees that Landlord and its Building Manager and their officers, employees and agents shall not be liable to Tenant, and Tenant hereby releases said parties for any personal injury or damage to or loss of personal property, including without limiting the generality of the foregoing, consequential damages within or without the Demised Premises from any cause whatsoever whether such damage, unless such loss or injury is the result of the intentional misconduct and/or gross negligence of Landlord, its Building Manager, or their officers, employees or agents, to the extent Tenant is covered therefore by Tenant's insurance policy. For purposes of this Lease, Tenant shall be deemed not to be



Initial

covered by Tenant's insurance policy to the extent of such policy's deductible portion. Tenant hereby accepts and assumes all liability regarding such damage, loss or injury and agrees to protect, indemnify and save Landlord harmless from and against all of the aforesaid, to the extent Tenant is covered therefore by Tenant's insurance policy. Tenant shall be responsible for all liability or claims made by Tenant's contractors or venders doing work for Tenant or to this Suite. Tenant shall be responsible to obtain full and complete insurance from all contractors or vendors and warrants to Landlord that all contractors or service providers hired by Tenant shall carry liability insurance of at least $2,000,000 and shall provide Landlord with a copy of such policies prior to contractors or service providers initiating their work.

**10. EMINENT DOMAIN:** If the whole or a substantial part of the building shall be taken or condemned for public or quasi-public use under any statute or by right of eminent domain or private purchase in lieu hereof by competent authority, Tenant shall have no claim against Landlord and shall not have any claim or right to any portion of the amount that may be awarded to Landlord as damages or paid as a result of any such condemnation or purchase; and all rights of the Tenant to damages therefore are hereby assigned by Tenant and Landlord. The foregoing shall not, however, deprive Tenant of any separate award for moving expenses or for any other award which would not reduce the award payable to Landlord. Upon the date the right to possession shall vest in the condemning authority, this Lease shall cease and terminate with rent adjusted to such date and Tenant shall have no claim against Landlord for the value of any unexpired term of this Lease.

**11. INSOLVENCY:**

(a) The appointment of a receiver or trustee to take possession of all or a portion of the assets of the Tenant, or

(b) an assignment by Tenant for the benefit of creditors, or

(c) the institution by or against Tenant of any proceedings for bankruptcy or reorganization under any state or federal law (unless, in the case of involuntary proceedings, the same shall be dismissed within thirty (30) days after institution), or (d) any execution issued against Tenant which is not stayed or discharged within fifteen (15) days after issuance of any execution sale of the assets of Tenant, shall constitute a breach of this Lease by Tenant, in which case Landlord shall have, without need for further notice, the rights enumerated in Section 14 hereof.

**11. DEFAULT:**

If Tenant shall fail to pay rent or any other sum payable to Landlord hereunder when due, or if tenant shall fail to perform or observe any of the other covenants, terms or conditions contained in this Lease within ten (10) days after written notice from Landlord or such longer period as is reasonably required to correct any such default provided Tenant promptly



Initial

Commence and diligently continues to effectuate a cure (but in any event not more than thirty (30) days after written notice thereof by Landlord), or if any of the events specified in Section 13 hereof occur, then, and in any of said cases (notwithstanding any former breach of covenant or waiver thereof in a former instance), Landlord, in addition to all other rights and remedies available to it by law or equity or by and other provisions hereof, may at any time thereafter;

Upon ten (10) days' notice to Tenant, declare to be immediately due and payable, on account of the rent and other charges herein reserved for the balance of the term of this Lease (taken without regard to any early termination of said term on account of default), a sum equal to the Accelerated Rent Component (as hereinafter defined), and Tenant shall remain liable to Landlord as hereinafter provided; and/or

Whether or not Landlord has elected to recover the Accelerated Rent Component, terminate this Lease on at least fifteen (15) days' notice to Tenant and, on the date specified in said notice, this Lease and the term hereby demised and all rights of Tenant hereunder shall expire and terminate, Tenant shall thereupon quit and surrender possession of the Demised Premises to Landlord in the condition elsewhere herein required and Tenant shall remain liable to Landlord as hereinafter provided. For purposes hereof, the Accelerated Rent Component shall mean the aggregate of: All rent and other charges, payments, costs and expenses due from Tenant to Landlord and in arrears at the time of the election of Landlord to recover the Accelerated Rent Component.

The minimum rent reserved for the then entire unexpired balance of the term of this Lease (including extension said renewals thereof) (taken without regard to any early termination of the term by virtue of any default), plus all other charges, payments, costs and expenses herein agreed to be paid by Tenant up to the end of said term which shall be capable of precise determination at the time of Landlord's election to recover the Accelerated Rent Component;

Landlord's good faith estimate of all charges, payments, costs and expenses herein agreed to be paid by Tenant up to the end of said term which shall not be capable of precise determination as aforesaid (as for such purposes no estimate of any component of additional rent to accrue pursuant to the provisions of Section 4 hereof shall be less than the amount which would be due if each such component continued at the highest monthly rate or amount in effect during the twelve (12) months immediately preceding the default).

In any case in which this Lease shall have been terminated or in any case in which Landlord shall have elected to recover the Accelerated Rent Component and any portion of such sum shall remain unpaid, Landlord may, without further notice, enter upon and repossess the Demised Premises, by lawful force, summary proceedings, ejectment or otherwise, and may dispossess Tenant and remove Tenant and all other persons and property from the Demised



Initial

Premises and may have, hold and enjoy the Demised Premises and the rents and profits therefrom. Landlord may as agent for Tenant if this Lease has not been terminated, or in its own behalf if this Lease has been terminated, relet the Demised Premises or any part thereof for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the term of this Lease) and on such terms (which may include concessions or free rent) s Landlord in its sole discretion may determine.

Landlord may, in connection with any such reletting, cause the Demised Premise to be redecorated, altered, divided, consolidated with other space or otherwise changed or prepared for reletting. No re-letting shall be deemed a surrender and acceptance of the Demised Premises or released of liability for the Tenant. Tenant shall, with respect to all periods of time up to and including the expiration of the term of this Lease (or what would have been the expiration date in the absence of default or breach) remain liable to Landlord as follows:

Initial

In the event of termination of this Lease on account of Tenant's default or breach, Tenant shall remain liable to Landlord for damages equal to the rent and other charges payable under this Lease by Tenant as if this Lease were still in effect, less the net proceeds of any reletting after deducting all costs incident thereto (including without limitation all repossession costs, brokerage and management commissions, operating and legal expenses and fees, reasonable alterations costs and expenses of preparation for reletting) and to the extent such damages shall not have been recovered by Landlord by virtue of payment by Tenant of the Accelerated Rent Component, (but without prejudice to the right of Landlord to demand and receive the Accelerated Rent Component), such damages shall be payable to Landlord monthly upon presentation to Tenant of a bill for the amount due.

In the event and so long as this Lease shall not have been terminated after default or breach by Tenant, the rent and all other charges payable under this Lease shall be reduced by the net proceeds of any reletting by Landlord (after deducting all costs incident thereto as above set forth) and by and portion of the Accelerated Rent Component paid by Tenant to Landlord, and any amount due to Landlord shall be payable monthly upon presentation to Tenant of a bill for the amount due.

In the event Landlord shall, after default or breach by Tenant, recover the Accelerated Rent Component from Tenant and it shall be determined at the expiration of the term of this Lease (taken without regard to early termination for default) that a credit is due Tenant because the net proceeds of reletting as aforesaid, plus the amounts paid to

Landlord by Tenant exceed the aggregate of rent and other charges accrued in favor of Landlord to the end of said term, Landlord shall refund such excess to Tenant promptly after such determination.

Landlord shall in no event be responsible or liable for any failure to relet the Demised Premises or any part thereof, or for any failure to collect any rent due upon a reletting, unless such responsibility is imposed by law.

As an additional and cumulative remedy of Landlord in the event of termination of this lease by Landlord following any breach or default by Tenant, Landlord, at its option, shall be entitled to recover damages for such breach in an amount equal to the Accelerated Rent Component determined from and after the date of Landlord's election under this subparagraph 13.G) Less the fair rental value of the Demised Premises for the remainder of the term of this Lease (taken without regard to the early termination), and such damage shall be payable by



Initial

Tenant upon demand. Nothing contained in this Lease shall limit or prejudice the right of Landlord to prove and obtain as damages incident to a termination of this Lease, in any bankruptcy, reorganization or other court proceedings, the maximum amount allowed by and statute or rule of law in effect when such damages are to be proved.

(i) Lessee covenants and agrees that if the rent and/or any charges reserved in this Lease as rent (including all accelerations of rent permissible under the provisions of this Lease) shall remain unpaid for five (5) days after the same is required to be paid, then and in that event, Landlord may seek a judgment against Tenant, and Landlord may recover from Tenant all rents hereunder (including all accelerations of rent permissible under the provisions of this Lease) and all charges reserved hereunder as rent, as well as interest thereon, costs and Attorney's fees and a late charge in the amount of five percent (5%) of all rent and/or any charges due Landlord which remain unpaid five (5) days after the same are required to be paid. Landlord may also claim against Tenant for the amount of rent in arrears (including all accelerations of rent permissible under the provisions of this Lease) and/or for all charges reserved hereunder as rent, as well as interest thereon and costs; together with an Attorney's fee of five percent (5%) of the full amount of Landlord's claim against Tenant.

Lessee covenants and agrees that if this Lease shall be terminated (either because of condition broken during the term of this Lease or during any renewal or extensions thereof and/or when the term hereby created or any extension thereof shall have expired) then, and in the event, Lessor may seek a judgment in ejectment to be entered against Tenant for possession of the Demised Premises, and Landlord may commence an action for entry of an order in ejectment for the possession of real property. Tenant further covenants and agrees, that if for any reason whatsoever, after said action shall have commenced, the action shall be terminated and the possession of the premises demised hereunder shall remain in or be restored to Tenant, Landlord shall have the right upon any subsequent default or defaults, or upon the termination of this Lease as above set forth to commence successive actions for possession of real property and to seek the entry of successive judgments in ejectment for possession of the premises demised hereunder.

The right to enforce all of the other provisions of this Lease herein provided for may at the option of any assignee of this Lease, be exercised by any assignee of the Landlord's right, title an interest in this Lease in his, her, or their own name, any statute, rule of court, custom, or practice to the contrary notwithstanding.



Initial

All of the remedies hereinbefore given to Landlord and all rights and remedies given to it by law and equity shall be cumulative and concurrent. No termination of this Lease or the taking or recovering possession of the Demised Premises shall deprive Landlord of any of its remedies or actions against the Tenant for rent due at the time or which, under the terms hereof would in the future become due as if there had been no termination, nor shall the bringing of any action for rent or breach of covenant, or the resort to any other remedy herein provided for the recovery of rent be construed as a waiver of the right to obtain possession of the premises.

Tenant agrees to pay Landlord as additional rent hereunder, all sums which may become due by reason of the failure of Tenant to comply with any of the terms, covenants, or conditions of this Lease to be kept and observed by Tenant, and any and all damages and costs and expenses (including without limitation thereto, reasonable attorney's fees) which Landlord may suffer or incur by reason of any default of Tenant and any damages to the Demised premises caused by any act or omission of Tenant, together with interest thereon from the date said additional rent accrues to the date of payment, at a rate per annum equal to the prime interest rate of Quakertown National Bank of Quakertown, Pennsylvania, or its successor, in effect during the period said payment is due, plus five percent (5%), or if lower, the highest legal rate in effect during the period said payment is due.

12. **SUBORDINATION:** This Lease is and shall be subject and subordinate to all mortgages which may now or hereafter be secured upon the Building, and to all renewals, modifications, consolidations, replacements and extensions thereof, provided that the holder of such mortgage delivers to Tenant a signed non-disturbance agreement to honor Tenant's rights under Section 23 of this Lease. Provided Tenant has received the aforementioned signed non-disturbance agreement from said mortgagee, this clause shall be self-operative and no further instrument of subordination shall be required by any lessor or mortgagee, but in confirmation of such subordination, Tenant shall execute, within fifteen (15) days after request, any certificate that Landlord may reasonably require acknowledging such subordination, provided such certificate is in a form reasonably satisfactory to Tenant. Notwithstanding the foregoing, provided Tenant has received the aforementioned written non-disturbance agreement from the party holding the instrument to which this lease is subordinate shall have the right to recognize and preserve this Lease in the event of any foreclosure sale or possessory action, and in such case this Lease shall continue in full force and effect at the option of the party holding the superior lien and Tenant shall attorney to such party and shall execute, acknowledge and deliver any instrument in reasonable form that has for its purpose and effect the confirmation of such attornment.

Initial

13. **NOTICES:** All bills, statements, notices, or communications which Landlord may desire or to be required to give to Tenant shall be deemed sufficiently given or rendered if in writing and either delivered to an officer of Tenant or sent by registered or certified mail, addressed to Tenant at the Demised Premises, and the time of giving of such noticed or communication shall be deemed to be the time when the same is deposited in the mail, or if not mailed, when personally delivered to tenant, as the case may be. Any notice by Tenant to Landlord must be served by registered or certified mail, prepaid, return receipt requested, addressed to Landlord at the address specified in subparagraph 3.C. of this Lease, or in the case of subsequent change upon notice given, to the latest address furnished.

14. **WAIVER OFSUBROGATION:** Each party hereto waives any and every claim which arises or which may arise in its favor and against the other party hereto during the term of this Lease or any extension or renewal thereof for any and all loss or damage to any of its property located within or upon or constituting a part of the Building, to the extent that such loss or damage is recovered under an insurance policy or policies and to the extent such policy or policies contain provisions permitting such waiver of claims. Each party agrees to request its insurers to issue policies containing such provisions.

15. **RENT TAX**: If, during the term of this Lease or any renewal or extension thereof, any tax is imposed upon the privilege of renting or occupying the Demised Premises or upon the amount of rental collected therefore, Tenant will pay each month, as additional rent, a sum equal to such tax or charge that is imposed for such month, but nothing herein shall be taken to require Tenant to pay any income, estate, inheritance or franchise tax imposed upon Landlord.

16. **PRIOR AGREEMENTS, AMENDMENTS:** Neither party hereto has made any representation or promises except as contained herein or in some further writing signed by the party making such representation or promise. No agreement hereinafter made shall be effective to change, modify, discharge or effect abandonment of this Lease, in whole or in part, unless such agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

17. **LANDLORD'S RIGHT TO CURE:** Landlord may (but shall not be obligated) on five (5) days' notice to Tenant (except that no notice need be given in case of emergency) cure on behalf of Tenant any default hereunder by Tenant, and the cost of such cure (including any attorney's fees incurred) shall be deemed additional rent payable upon demand.



Initial

18. **PUBLIC LIABILITY INSURANCE:** Tenant shall always during the term hereof maintain in full force and effect with respect to the Demised Premises and tenant's use thereof, comprehensive public liability insurance, naming Landlord as an additional insured, covering bodily injury to persons in amounts at least equal to $1,000,000.00 and damage to property of at least $100,000.00. Tenant shall lodge with Landlord duplicate originals or certificates of such insurance at or prior to the Lease Commencement Date, together with evidence of paid-up premiums and shall lodge with Landlord renewals thereof at least thirty (30) days prior to expiration thereof.

19. **ESTOPPEL STATEMENT:** Tenant shall, from time to time, within fifteen (15) days after request by Landlord, execute, acknowledge and deliver to Landlord a statement certifying, if true, that this Lease is unmodified and in full force and effect (or that the same is in full force and effect as modified, listing any instruments of modification), the dates to which rent and other charges have been paid, and whether or not, to the best of Tenant's knowledge, Landlord is in default hereunder or whether Tenant has any claim demands against Landlord (and, if so, the default, claim and/or demand shall be specified).

20. **QUIET ENJOYMENT:** Landlord covenants and represents that Landlord is the owner of the Demised Premises herein leased, and has the right and authority to enter into, execute and deliver this Lease and does further covenant that Tenant, upon paying the required rent herein contained, and upon timely compliance with all other obligations of Tenant herein contained, shall and may peaceably and quietly have, hold and enjoy he Demised Premises for the term of this Lease (or any extension thereof) without hindrance or molestation from Landlord.

21. **GOVERNING LAW:** This Lease shall be governed by the laws of the Commonwealth of Pennsylvania.

22. **PARTIAL INVALIDITY:** If any clause or provision of this Lease or the application thereof to any person or in any circumstance shall to any extent be invalid or unenforceable, the remainder of this Lease, or the application of such clause or provisions to persons or in circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each clause or provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

23. **DEFINITION OF TENANT AND LANDLORD:**

The word "Tenant" as used in this Lease shall be construed to mean tenants in all cases where there is more than one tenant, and the necessary grammatical changes required to make the provisions hereof apply to corporations, partnership, or individuals, men or women, shall in all cases be assumed as though in each case fully expressed. Each provision hereof shall extend



Initial

to and shall, as the case may require, bind and insure to the benefit of Tenant and its heirs, legal representatives, successors and assigns, provided that this Lease shall not inure to be benefit of any assigned, heir, legal representative, transferee or successor of Tenant except upon the express written consent or election of Landlord. The term "Landlord" as used in this Lease means the fee owner of the Building or, if different, the party holding and exercising the right, as against all others (except space tenants of the building) to possession of the entire Building. Landlord above-named represents that it is the holder of such rights as of the date of execution hereof. In the event of the voluntary or involuntary transfer of such ownership or right to a successor-in-interest of Landlord.

Landlord shall be freed and relieved of all liability and obligation hereunder which shall thereafter accrue (and, to any unapplied portion of Tenant's security deposit. Landlord shall be relieved of all liability therefore upon transfer of such portion to its successor-in-interest) and Tenant shall look solely to such successor-in-interest for the performance of the covenants and obligations of the Landlord hereunder which shall thereafter accrue. Notwithstanding the foregoing, no mortgage or ground lessor which shall succeed to the interest of Landlord hereunder which shall thereafter accrue. Notwithstanding the foregoing, no mortgage or ground lessor which shall succeed to the interest of Landlord hereunder (either in terms of ownership or possessory rights) shall

(i) be liable for any previous act or omission of a prior landlord,

(ii) be subject to any rental offsets or defenses against a prior landlord,

(iii) be bound by any amendment of this lease made without its written consent, or by payment by Tenant of rent in advance in excess of one (1) month's minimum rent, or

(ix) be liable for any security not actually received by it. Subject to the foregoing, the provisions hereof shall be binding upon and inure to the benefit of the successors and assigns of Landlord.

**24. LANDLORD'S REPRESENTATIONS AND WARRANTIES:**
Landlord covenants, represents and warrants to Tenant that:

(a) to the best of Landlord's actual knowledge, the Demised Premises will be in good operating condition and repair as of the Lease Commencement Date; and

(b) To be best of Landlord's actual knowledge, Landlord has not received notice of any claimed violation of any Federal, State or local law, regulation or ordinance concerning the environment, state, condition or quality of the Demised Premises or the property on which the Demised Premises are located.

**25. CONSENT NOT UNREASONABLY WITHHELD:** Wherever in the Lease Agreement Landlord's or Tenant's approval or consent is provided for or required, neither Landlord nor Tenant shall unreasonably withhold, condition or delay its approval or consent.



Initial

**26. LANDLORD WAIVER: N/A**

**27. CAPTIONS:** The captions of the sections and paragraphs in this Lease are inserted and included solely for convenience and shall not be considered or given any effect in construing the provisions hereof.

IN WITNESS WHEREOF, the parties hereto have caused this Lease to be executed by their duly authorized representatives as of the day and year first above written.

**LANDLORD:**

Steve Smith 8/25/26

**ATRIUM PROPERTIES, LLC.**

Managing Member

Jeri K. Smith 8/29/26

**TENANT:**

Signed by:

664BACEB990148A...

8/30/2026

**Omni Health Services Inc.**

President of Omni Health Services Inc.



Initial